JM:WMP
F.#2009R01433

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

THOMAS BANNON,
ROBERT BARDEY and
THEODORE SWEETEN,

        Defendants.

- - - - - - - - - - - - - - - - X

FILED
CLERK
2012 JUL 20 PM 12:40
U.S. DISTRICT COURT
EASTERN DISTRICT
NEW YORK

CR 12-0471

I N D I C T M E N T

Cr. No. _____
(T. 18, U.S.C., §§
981(a)(1)(C), 1343, 1349,
1623, 2 and 3551 et seq.;
T. 21, U.S.C., § 853(p);
T. 28, U.S.C., § 2461(c))

GARAUFIS, J.

THE GRAND JURY CHARGES:

INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

The Defendants and Their Companies

1.   The defendant THOMAS BANNON was the President of Overseas Investors LLC, which also did business as Overseas Investors International Ltd. (collectively, "Overseas Investors"). Overseas Investors was a Florida limited liability company with its principal place of business in New York. Overseas Investors purportedly set up funded accounts in its clients' names at large, reputable banks in exchange for a substantial fee. BANNON represented that the money Overseas Investors used to fund these accounts came from wealthy investors who were willing to lease their funds to Overseas Investors' clients in exchange for a fee.

2. The defendant ROBERT BARDEY was purportedly a senior partner at Bardey & Associates, with offices located in New York. BARDEY was purportedly an attorney licensed to practice law in the State of New York with an attorney escrow account at Wachovia Bank in New York.

3. The defendant THEODORE SWEETEN was the President of Symtech International, Inc. ("Symtech"). Symtech was a Wyoming corporation with its principal place of business in Ashland, Oregon. Symtech purportedly had expertise in various investment programs that SWEETEN referred to as "Special Investment Programs." SWEETEN supposedly developed and patented the "Clean Air Valve," held six United States patents and twenty international patents and was developing additional environmental products in collaboration with other inventors.

The Fraudulent Scheme

4. In or about and between June 2007 and May 2012, the defendants THOMAS BANNON, ROBERT BARDEY, THEODORE SWEETEN and others executed a scheme to fraudulently obtain $5 million from John Doe, an individual whose identity is known to the Grand Jury (the "Victim").

5. The defendants THOMAS BANNON and ROBERT BARDEY were friends. In or about 2007, the defendant THEODORE SWEETEN was introduced to BANNON by a broker, an individual whose identity is known to the Grand Jury (the "Broker").

2

6. On or about October 12, 2007, the defendant THEODORE SWEETEN, through Symtech, entered into a joint venture agreement (the "JVA") with the Victim. In the JVA, *inter alia*, SWEETEN made the following representations: (i) he had knowledge of and expertise in various "special investment programs"; (ii) the Victim's $5 million fee would be placed in an "independent escrow account appointed by the banking institute"; and (iii) "[i]f verification of the leveraged funds [was] not successful the funds held in escrow [would] immediately be released back to [the Victim]."

7. The defendant THOMAS BANNON represented to the Victim and other clients that Overseas Investors collaborated with hedge funds and wealthy investors who were willing, in exchange for a substantial fee, to lease funds and set up bank accounts in its clients' names that contained the leased funds. BANNON represented to clients that Overseas Investors provided clients with proof of the existence of these accounts by issuing clients "Proof of Funds" letters. "Proof of Funds" letters are typically produced by banks and other financial institutions to verify the balance of funds that a client has in a particular bank account.

8. The defendant THOMAS BANNON further represented that the Victim's $5 million fee for the leased-funds account would be held in the defendant ROBERT BARDEY's attorney escrow

3

account pending the opening of a bank account with the leased funds and the delivery of the Proof of Funds letter, which would demonstrate that such an account had been opened.

9.  On or about October 19, 2007, the defendants THOMAS BANNON, ROBERT BARDEY and THEODORE SWEETEN, through their companies Overseas Investors, Bardey & Associates and Symtech, respectively, entered into a "Financial Services and Escrow Agreement" (the "Escrow Agreement"). The Escrow Agreement contained, inter alia, the following provisions:

- WHEREAS [Symtech] has requested [Overseas Investors] to provide said Bank Advice/Proof of Funds evidencing the Blocked Funds in the account in the name of [Symtech] or its NOMINEE, with the understanding that [the Victim] will appear as another signatory of this account;

- WHEREAS [Overseas Investors] is prepared to arrange (1) an account facility . . . in assigning in favor of [Symtech] a cash sum in the amount of One Hundred Million Dollars . . . for an agreed initial period of ONE YEAR . . .; and

- WHEREAS Escrow Agent, in his capacity as a practicing lawyer has agreed to assist both [Symtech] and [Overseas Investors] in the above-referenced matter.

10. Relying on the JVA, the Escrow Agreement and other representations made by the defendants, the Victim deposited $5 million into the defendant ROBERT BARDEY's purported attorney escrow account on or about October 22, 2007.

4

11. On or about and between October 22, 2007 and February 10, 2008, prior to the opening of a bank account with the leased funds and the delivery of the Proof of Funds letter demonstrating that such an account was opened, the defendant ROBERT BARDEY made or caused to be made, <u>inter alia</u>, the following wire transfers out of his purported attorney escrow account at Wachovia Bank: (i) $100,000 to the defendant THEODORE SWEETEN; (ii) $160,000 to the purported broker of the transaction; (iii) $190,817 to SWEETEN through Symtech; (iv) $10,000 to SWEETEN's wife; and (iv) $600,000 to the defendant THOMAS BANNON through Overseas Investors. In addition, over the same time period, BARDEY issued checks to himself totaling more than $100,000.

12. In or about April 2008, the defendant THOMAS BANNON provided the defendant THEODORE SWEETEN with a Proof of Funds letter, purportedly from HSBC Bank, confirming that an account with $100 million in leased funds had been opened at HSBC Bank in the name of Symtech. However, this leased funds account was never opened, and the Proof of Funds letter was fraudulent. Contrary to the defendants' prior representations, the defendants never returned any portion of the Victim's $5 million. Instead, the defendants and their co-conspirators split the Victim's $5 million among themselves.

5

## COUNT ONE
(Conspiracy to Commit Wire Fraud)

13. The allegations contained in paragraphs 1 through 12 are realleged and incorporated as though fully set forth in this paragraph.

14. In or about and between June 2007 and May 2012, both dates being approximate and inclusive, within the Southern District of New York, the defendants THOMAS BANNON, ROBERT BARDEY and THEODORE SWEETEN, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud the Victim, and to obtain money and property from the Victim by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNTS TWO THROUGH TEN
(Wire Fraud)

15. The allegations contained in paragraphs 1 through 12 are realleged and incorporated as though fully set forth in this paragraph.

6

16. In or about and between June 2007 and May 2012, both dates being approximate and inclusive, within the Southern District of New York, the defendants THOMAS BANNON, ROBERT BARDEY and THEODORE SWEETEN, together with others, did knowingly and intentionally devise a scheme and artifice to defraud the Victim, and to obtain money and property from the Victim by means of materially false and fraudulent pretenses, representations and promises.

17. On or about the approximate dates specified below, for the purpose of executing such scheme and artifice, the defendants THOMAS BANNON, ROBERT BARDEY and THEODORE SWEETEN transmitted and caused to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds as described below:

| COUNT | DEFENDANT(S) | DATE | DESCRIPTION |
|---|---|---|---|
| TWO | BANNON | 10/19/2007 | Email from BANNON to the broker, copying SWEETEN, which states, in part: "Please keep me informed as to your progress with Mr. Sweeten, and the comfort level of his FUNDER. Do not go to Mr. Bardey. . . . This is not the first time we have had inquiries made about our escrow attorney." |
| THREE | BARDEY and SWEETEN | 11/28/2007 | Wire transfer of $10,000 from BARDEY's account at Wachovia Bank in New York to Ilona Sweeten's account at Wells Fargo Bank in San Francisco, California |

7

| COUNT | DEFENDANT(S) | DATE | DESCRIPTION |
|---|---|---|---|
| FOUR | BARDEY and SWEETEN | 11/29/2007 | Wire transfer of $190,817 from BARDEY's account at Wachovia Bank in New York to Symtech's account at U.S. Bank in Portland, Oregon |
| FIVE | BANNON | 12/19/2007 | Email from BANNON to SWEETEN, which states, in part: "This email is to confirm that we have recieved [sic] notice from our Hedge Funds Manager, that Duetsche [sic] Bank will provide a bank account for your company, Symtech Intl, in the amount of $100 Million dollars, and as proof of this performance, will provide you with a bank statement, and confirmation letter, as described in our contract. This event will take place the first full week in January, and specifically on January 10, 2008." |
| SIX | SWEETEN | 1/7/2008 | Email from SWEETEN to the Victim, which states, in part: "Three of the four transactions are still on track . . . our biodiesel transaction should have the paperwork finalized by the end of this week as well." |
| SEVEN | BANNON | 2/20/2008 | Email from BANNON to SWEETEN, copying the broker, which states, in part: "There is a final meeting going on today, and tomorrow, to finish the SYMTECH 100 Million Proof of Funds.  I will get the commitment tomorrow from DUBAI, as to when the P.O.F will be delivered, and what bank will deliver it, etc. . . . . ." |

8

| COUNT | DEFENDANT(S) | DATE | DESCRIPTION |
|---|---|---|---|
| EIGHT | BANNON | 3/1/2008 | Email from BANNON to SWEETEN, copying the Victim, which states, in part: "I have been traveling, and working 24/7, on this long delayed Proof of Funds Closing. . . . I have pushed everyone this Friday, even on their 'holy' time, to get some firm dates, changes, commitments etc, for our closing. . . . I am collecing [sic] it, and will get into some formal fashion. I will be calling you, and emailing you, every day, until we get this finished." |
| NINE | BANNON | 4/16/2008 | Email from BANNON to the broker, which attaches three documents and states, in part: "HERE ARE THE DOCUMENTS FROM HSBC, HONG KONG, FOR THE SYMTECH INTERNATIONAL INC. ACCOUNT." |
| TEN | SWEETEN | 6/27/2008 | Email from SWEETEN to the Victim, which states, in part: "Of the original $5M in escrow, $4M was to go to Tom Bannon (Overseas Investors) and the bank. The remaining balance was to be sent to Re-Run Associates as their fee for introducing us to Overseas and helping to acquire the POF . . . PS-you need to ponder carefully any actions you might think you are entitled to take against either me personally or Symtech especially relating to a 'criminal' investigation . . . ." |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

9

## COUNT ELEVEN
(Perjury)

18. The allegations contained in paragraphs 1 through 12 are realleged and incorporated as though fully set forth in this paragraph.

19. On or about August 26, 2011, within the Eastern District of New York, the defendant ROBERT BARDEY, while under oath in a proceeding before a grand jury of the United States in the Eastern District of New York, did knowingly and intentionally make one or more false material declarations as set forth below:

> Q: Do you remember whether the terms of the escrow agreement allowed one party to release the money without receiving confirmation from the other side of the parties?
>
> A: As I recall, disbursement was based upon my receiving certain bank documents proving to me that certain steps had been taken.
>
> Q: And who would give you those bank documents?
>
> A: I think in one case they came from a bank in Dubai.
>
> \*\*\*
>
> Q: And what steps were those that had to take place before you could release the funds?
>
> A: Evidence that -- frankly, sir, I do not remember. All I know is that when I reviewed the document, I received certain documents and I was satisfied with the nature of the documents received.

20. The aforesaid testimony by the defendant ROBERT BARDEY, as he then and there well knew and believed, was false in that ROBERT BARDEY disbursed funds received under the terms of

10

the escrow agreement almost immediately upon receipt and prior to his receiving or reviewing any bank documents.

(Title 18, United States Code, Sections 1623 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION

21. The United States hereby gives notice to the defendants THOMAS BANNON, ROBERT BARDEY and THEODORE SWEETEN that, upon conviction of any of the offenses charged in Counts One through Ten, the government will seek forfeiture, in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), of any property, real or personal, which constitutes or is derived from proceeds traceable to such offenses.

22. If any of the above-described forfeitable property, as a result of any act or omission of the defendants THOMAS BANNON, ROBERT BARDEY and THEODORE SWEETEN:

    a.   cannot be located upon the exercise of due diligence;

    b.   has been transferred or sold to, or deposited with, a third party;

    c.   has been placed beyond the jurisdiction of the court;

    d.   has been substantially diminished in value; or

    e.   has been commingled with other property which

11

cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 28, United States Code, Section 2461(c); Title 21, United States Code, Section 853(p); Title 18, United States Code, Section 981(a)(1)(C))

A TRUE BILL

_____
FOREPERSON

_____
LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F. #2009R01433
FORM DBD-34
JUN. 85

No. _____

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

vs.

THOMAS BANNON, et al.,

Defendants.

## INDICTMENT

(T. 18, U.S.C., §§ 981(a)(1)(C), 1343, 1349, 1623, 2 and 3551 et seq.;
T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

A true bill.

*Elena P. Badillo*

―――――――――――――――――
     *Foreman*

Filed in open court this _____ day,

of _____ A.D. 20 ____

―――――――――――――――
     *Clerk*

Bail, $ _____

*Winston M. Paes, Assistant U.S. Attorney (718-254-6023)*